LADSON A. MILLS, Admr., &c., v. JAMES RICHARDS, Exor., &c.

HUSBAND AND WIFE.—M. and his wife agreed upon articles of separation. The wife relinquished her right to dower in his estate, and her father executed a bond to indemnify M. against any debts or liabilities the wife might thereafter contract; and M., in consideration thereof, released and conveyed to his wife directly all the property he had acquired by virtue of his marriage with her; among which was a promissory note on a third person, which he indorsed and delivered to her father. This note, after the death of M.'s wife, was collected by her father. M., afterwards, as administrator of his wife, brought an action against the executor of his wife's father, to recover the sum so received: *Held*, that the conveyance of M., even if upon a consideration favored in law, was void at common law; and that, upon the collection of the note by the testator, if a right of action accrued to any one, it was not to the representative of M.'s wife, but to M. himself; and that, therefore, he could not recover in this action.

IN error from the Circuit Court of Madison county. Hon. E. G. Henry, judge.

*Davis* and *Hill* for the plaintiff in error.

There are three pleas under the Statute of Limitations: 1st. The general statute. 2d. The statute of two years for presentation, or non-claim; and 3d. The statute of four years.

It is very clear that the general statute does not apply, because, from the statement of the complainant, the cause of action did not accrue until after the death of the intestate (plaintiff's intestate); and hence the statute does not commence to run until there is a *demand*, and a party capable of suing, and one capable of being sued; and

hence there was no one capable of suing until January, 1856, when letters of administration for the first time were granted on the estate of plaintiff's intestate. Angell on Limitations, pp. 55, 62, 167.

If the statute had commenced running, it would have continued to run, but, in the case at bar, it never commenced running.

As to the two years statute, or the statute of non-claim, as it is sometimes called, that stands on the same basis, for it is but a statute of limitations, and has been so decided in 5 S. & M. 65, and 7 S. & M. 437; and, being but a limitation, it can only bar claims existing in favor of some person capable of bringing suit; in favor of some person in existence capable of maintaining an action and asserting his rights; that is, there must be both an *actor* and *reus*. The same remark is true of the statute of four years; that is, that it is but a limitation act, and can only bar claims existing in favor of some person capable of maintaining suit.

Besides, this statute only applies to claims existing against the estate, at the death of the testator or intestate, and this claim is not of that character, because in the lifetime of Collins (defendant's testator) there was no person capable of bringing suit and maintaining the action. See *Bingaman et al.* v. *Robertson*, 25 Miss. R. 502, and especially the concluding paragraph of Judge Yerger's opinion, page 507.

These remarks are sufficient to establish that the judgment of the court was erroneous, in extending the demurrer to these pleas, back to the declaration.

We come next to consider the case as presented under the amended count and proof, and the action of the court in granting defendant's and refusing plaintiff's instructions.

The view of defendant in error is that the *post nuptial* deeds are void, and hence that the right of action against Joseph Collins, or Collins's executor, was in Ladson A. Mills, the husband, and that his wife took no interest therein.

Our view is, that the deeds (three in number) constitute in law but one assurance or conveyance, and that the substantial office of a trustee was performed by Collins, when he covenanted to save Mills harmless against the debts of his wife, and that as the title to the personal property passed by delivery, as also the title of this note passed by its indorsement and delivery to Joseph Collins as

trustee, hence the matter was not executory, but executed; and as Mills had released all interest, and by his deed barred himself, his heirs and assigns, from asserting any claim thereto, we take it to be clear, that Mills could not maintain the suit against Collins; nor can Collins set up in defence that the suit should have been brought by Mills. *Choses in action* passed to the wife during coverture would vest in the husband, if reduced to possession during the lifetime of the wife; but if not reduced in her lifetime, they go to her administrator.

Now, can it be pretended that Mills, after the death of his wife, could have maintained an action against Collins, with his deed staring him in the face as an estoppel, and when, in point of fact, even if there were no trustee, equity would sustain the provisions of the deed as between the parties to the deed ? If Mills, then, had undertaken to bring suit in his own name against Collins, or Collins's executor, a court of equity would have restrained him, and said that as between the parties the deeds are good.

Hence it may be that as between the parties (husband and wife) no court, except a court of equity, could have jurisdiction, but it does not follow that it is necessary for the wife to bring suit in that court against one who has received money, which *ex equo et bono* belongs to her. Now, it will be borne in mind by the court that the amended count under which the proof was taken was a count for *money had and received*, which, in its spirit, has been likened to a bill in equity, and will lie wherever one man has received money which, *ex equo et bono*, belongs to another; and there can be no question that, according to equity and right, this money belongs to the estate of Caroline Mills.

It has been held in some of the States that where the husband has left his wife, and removed out of the State (which is the fact in the case at bar), that the wife, in the lifetime of her husband, can bring suit in her own name in a court of law. We do not remember the cases, but the court will find them cited in the notes to a late edition of Kent's Commentaries, vol. 2d, pp. 154, 155, 156, and 175. But whether this be so or not, our point is that, it being a chose in action passed to the wife for valuable consideration, it would survive to her, and if not reduced into possession by the husband during the lifetime of the wife, it would belong to the wife's administrator.

Now, it appears that the claim was collected, after the death of Caroline Mills, by General Collins; and the court will see from the will of General Collins, that in the event that Ladson A. Mills should become guardian of William J. Mills, or interfere in any way with his estate, that the legacies given to William J. Mills were withdrawn; so that the court will see a very good reason why Ladson A. Mills should not interfere in the least with the affairs of William J. Mills, until after the death of William J. Mills, when the rights of his half brothers and sisters became fixed in his estate. Now can it be said that the failure of Ladson A. Mills to assert the claims of the estate of Caroline Mills can affect the rights of that estate?

But it is said that as Collins held in a trust capacity, only a court of equity can entertain the suit. That is not true, because if the deeds be void, as contended by defendant in error, then Collins is not a technical trustee; he occupies the position of an ordinary trustee, such as a bailee or agent, and hence liable to be sued in a court of common law.

But it was said in the oral argument that this money was the property of General Collins, originally advanced to Mills, and that the redelivery of the note was only a reimbursement. The court will see that such is not the proper construction of the evidence, and that in point of fact it only shows that Mills had received with his wife certain negroes and $2000 in money, and that this money was redelivered to his wife; and Mills states emphatically that he received no property from his father-in-law : the only property he received was his wife's separate property, independent of her father.

In conclusion, it will be remembered that the rights of the estate of Caroline Mills are to be considered without reference to the fact who is her administrator. The rights of the estate are the same, whether Ladson A. Mills administered or John Doe.

*H. A. H. Lawson*, for defendant in error.

The deeds executed between the husband and wife, without the intervention of a trustee, are void in a court of law. *Tourney* v. *Sinclair*, 3 How. R. 324; *Ratcliffe* v. *Dougherty*, 24 Miss. R. 181.

If the deeds of separation were void at law—this being a suit

at law—then the legal title remained in A. Mills as husband, and he had a right of action from the moment the money was collected, in 1840, and hence is barred by the Statute of Limitations.

If Joseph Collins were in fact a trustee, which we deny, then the representative of the *cestui que trust*, Caroline Mills, has no right to call on the trustee in a court of law to settle up the trust, but must sue in equity. She had not the legal title, but a pure and unmixed equity, which cannot be enforced in a court of law, but, by the constitution, is enforceable alone in chancery.

SMITH, C. J., delivered the opinion of the court.

This was a suit brought in the Circuit Court of Madison by Ladson A. Mills, as the administrator of Caroline Mills, deceased, against James Richards, executor of Joseph Collins, deceased, to recover certain moneys, alleged to have been received for the use of said Caroline Mills, by the defendant's testator. The defendant, in his answer, denied the allegations of the complainant; averred that the cause of action did not accrue within three years and nine months next before the commencement of the suit; that the cause of action did not accrue within four years next before the grant of letters testamentary to the defendant, and that the claim was not presented to the executor within two years after notice of the grant of administration. To the three last defences, the plaintiff demurred, and the demurrer was replied to and sustained as a demurrer to the complaint. Whereupon, under leave of the court, the plaintiff amended his complaint by inserting an additional count, charging the defendant for other moneys, alleged to have been received by his testator, for the use of plaintiff's intestate. The answer denied the allegations of the amended complaint, and defendant, on the trial, relied on the Statute of Limitations. A verdict and judgment were rendered for the defendant. Whereupon the plaintiff prosecuted this writ of error.

The only question necessary to be examined, involves the title of the plaintiff to recover, in his character of administrator of the intestate.

The plaintiff in error and Mrs. Caroline Mills, in 1839, were living together as husband and wife, having intermarried in 1836. At the former date they agreed to separate and live apart. In

execution of that agreement, mutual deeds were made by Mills and wife. Mrs. Mills, on her part, released all right to dower, and all claim, right, or title whatever to any property, real or personal, which Mills then owned, or of which he might thereafter become the owner, in consideration that Mills had "relinquished, quit-claimed, and forever given up all right, title, or interest whatever in and to all the estate, real and personal, which he acquired by virtue of his intermarriage with" her, and in consideration also that Mills had forever relinquished and given up all right to the services, or control over her person, acquired by virtue of the marriage, and all rights and authority, as parent or guardian, over the offspring of the marriage. At the same time Mrs. Mills, jointly with her father, Joseph Collins, executed an instrument conditioned to secure, and indemnify said Mills against any liability incurred by her since the 1st of January, 1839, and against all debts or liabilities which she might thereafter contract; and also against any claim she might thereafter set up to his estate.

Mills, at the same time, in consideration of the bond of indemnity, and the separate instrument executed by Mrs. Mills, released to her all right and title which he held to the property of all kinds owned by her at the time of their intermarriage. He also, by the same instrument, relinquished his paternal rights, in reference to their only child, Wm. J. Mills. The deed specifies the several articles of property, his title to which, was thereby intended to be released. Amongst them was a note of hand, due on the 1st of January, 1840, the contents of which are the subject-matter of this controversy. The note was indorsed, and delivered by Mills to said Collins, by whom it was collected within a short time after it became due.

Mrs. Mills died, after the separation, in 1839, and Collins was appointed guardian of her infant son. Collins died in 1847, and his executors qualified in March of the same year. The money collected on the note was never paid or accounted for by Collins or his executors. Young Mills died in 1853; and in 1856, administration on his wife's estate was granted to Mills, who, as her administrator, claims the money, with interest from the time it was received by Collins.

As to Mills's title to recover in this suit, very little may be said.

A man cannot by any conveyance at common law limit an estate to his wife.   Hence, if it were conceded that the transaction would, in equity, be upheld as a settlement for the separate maintenance of the wife in view of the separation which immediately ensued, the deed of release at law was worthless, inoperative, and void. Mrs. Mills acquired nothing in virtue of the deed, and Mills parted with no title.   When Collins collected the money, and failed to account for it, if a right of action accrued to any one, it was not to Mrs. Mills's representative, but to Mills himself.   He was, therefore, clearly not entitled to recover in his representative character; and it is scarcely necessary to add that the claim was barred, if asserted by him in his individual capacity.

The deeds of Mills and Mrs. Mills were made directly to each other.   No third party was expressly designated as the trustee; and it is manifest, from the tenor of the instruments, that none was contemplated by the parties.   Assuming that the motive of the transaction, or, in other words, that the consideration upon which the instruments were founded, was one which is favored by the policy of the law, Mills himself might be held as the trustee for his wife, and in a court of chancery compelled to observe the terms of the settlement.   But, according to the manifest construction of the whole affair, there is no pretence for the assumption, that Collins should be regarded as the trustee for Mrs. Mills.

Judgment affirmed.